# DECLARATION OF MICHAEL A. KERNBACH

I, Michael A. Kernbach, declare as follows: that I am a citizen of the Commonwealth of Virginia and licensed attorney to practice law in the State of Florida, State of New York, Commonwealth of Virginia and the District of Columbia, as well as the United States District Courts in the District of Columbia and Eastern and Western Districts of the Commonwealth of Virginia, having been duly retained by Alexandra Heidebruch, sister of Michael Sprick, appointed the conservator of Michael Sprick in the Federal Republic of Germany, understanding the legal significance of an affirmation before this Court states as follows:

1.    I am over the age of 18 and a resident and citizen of the Commonwealth of Virginia, currently maintaining an office in the practice of law at 9253 Mosby Street, Suite 201, Manassas, Virginia 20110.

2.    The matters attested to herein are based on my own personal knowledge and knowledge gained as an attorney representing the interests of Michael Sprick in this matter.

3.    On or about October 13, 2011, I received an email from a colleague requesting assistance from a German speaking attorney to assist a family from Germany who needed assistance with a personal injury matter for someone who had been injured in Roanoke.

4.    The next day, October 14, 2011, I began to exchange emails with Svenja Risse, who I later learned was the daughter of the partner of Wilhelm Sprick, Marget, to obtain information regarding what happened to Michael Sprick in Virginia. I was recommended by American friends as a German speaking lawyer. All Svenja was able to find out was that it was a truck which hit Michael and he was taken to the hospital in Roanoke. I was informed that Alexandra Heidebruch was planning a trip to the United States to visit the hospital. Svenja made inquiries regarding the need for a lawyer in the United States.

5.    Svenja also made contact with a person by the name of Marcus Goeltz who recommended me to the family. Mr. Goeltz was a previous client of mine and told her he was from Germany when he was hit by a car in Virginia. He told her that he was very satisfied with my services and noted that I spoke German which was very helpful.

6.    Svenja and I began to exchange emails and spoke by telephone after October 12, 2011. Alexandra Heidebruch flew to Virginia on October 19, 2011 and was met by several people at the hospital who provided her with assistance while she attended to the medical situation of her brother. I learned from my later meeting with her that it was very difficult to understand the medical issues facing Michael and she was at a complete loss how to deal with the hospital and the pending legal issues.

7.    I drove to Roanoke and met Alexandra at the hospital on the evening of October 20, 2011. After the appropriate introduction to the client, we discussed the

medical situation facing Michael and the nature and extent of his injuries. I was told about his trip to the United States and the fact that he was riding a bicycle from Chicago to Miami, when he was struck by a truck. Given my years of experience with trucking accidents and individuals involved in such accidents, I explained to her that it was very important to fully investigate the accident and given Michael was unlikely to be able to offer any assistance, we needed to be very proactive in our investigation.

8.    I explained the legal and insurance process to Alexandra and the importance of proving the truck driver was the only one involved in causing the accident. While I explained that we had no idea how much insurance there was available to help Michael, any issue of contributory negligence or the existence of any other person causing the accident could materially undermine any potential recovery.

9.    We next discussed the medical situation of Michael and the severity of his injuries. At that time, the information from the physicians (as explained to me by Alexandra) was that Michael was on a ventilator and had a serious brain injury. He had been injured by the truck while on the bicycle and was thrown some distance. I was told there was travel insurance whose identity was unknown and a policy of health insurance covering him in Germany, which I expected based on my own knowledge of the health care system in Germany. If the information provided to me by Alexandra was correct as I understood it, Michael, in all likelihood would never return to Germany and I told her that he would probably require continued treatment in the United States.

10.    Alexandra did not understand how the person causing the accident would not be paying the charges as they accrued in Roanoke unless we were going to settle the case. I knew that was unlikely that there would be any other sources of financial assistance offered to Sprick which made this particularly challenging. After our initial meeting, Alexandra expressed her wish that I try to get Michael back to Germany as soon as possible and if he was near death, it was her wish that her father see him one last time.

11.    I reviewed the retainer agreement to hire me as their attorney with Alexandra Heidebruch in German, along with the medical releases allowing me immediate access to the records of Sprick at the hospital. Ordinarily, I would have used a retainer offering a contingency fee of 40 percent for settlement or trial to hire me in a trucking matter. However, as I understood the injuries to be catastrophic at that time, I decided to only charge a contingency fee of one-third in this case. I thoroughly explained in German to Alexandra that she did not have to pay any money to me in this situation and the costs incurred would be detailed on a ledger. I understood that her family did not have the funds to pay me as the costs were incurred and the use of the contingency agreement was acceptable to her. She reviewed the contract as I explained what each term meant, approved it and signed that contract. She also signed the medical releases. We then went to see Michael in his room where I had my first opportunity to observe him.

12. Michael was unconscious, and was not breathing on his own. He appeared to be completely unresponsive and based on my own personal observations, his medical situation was dire.

13. After my initial meeting with Alexandra Heidebruch, I returned to my office and completed the following initial tasks to prosecute this matter:

      a.    I contacted the office of Steve Chewning to begin the process of a complete accident crash investigation, including the recovery of the bicycle of Michael Sprick and his personal effects.

      b.    I contacted Willis Perrine to travel to Pulsaski County to visit the accident scene, locate and interview witnesses and take photographs of the area.

      c.    I prepared a Complaint for filing in Pulsaski County Circuit Court to begin the litigation process.

      d.    I contacted and interviewed Trooper Dalton regarding the witnesses and physical evidence.

      e.    I drafted and executed letters to preserve and obtain radio traffic transmissions and dispatch logs for the surrounding jurisdictions and the State Police.

      f.    I contacted the State Police headquarters in Wytheville to request the dispatch log and radio transmissions.

      g.    I drafted and executed evidence preservation letters to the defendants and research on the defendants involved in this matter. My office emailed copies of letters and a copy of the lawsuit filed against the person and company at fault for the accident to Alexandra Heidebruch.

14. On or about October 23, 2011, I drove back to the hospital to meet with Alexandra. I had, in the interim, made arrangements with the Trooper and Mr. Chewning's office to obtain the bicycle and the personal effects of Michael Sprick. I met with Alexandra Heidebruch and Jamie from the office of Mr. Chewning at Carilion Roanoke Memorial Hospital. I obtained 6 side bags from the bicycle and a bag of personal effects. I observed the bicycle of Mr. Sprick which I requested they hold and preserve.

15. We drove to the parking garage of the hospital and opened up all of Michael's bags to look for his computer, camera and his cell phone. I secured his passport and important papers. After we spent at least an hour or more going through the bags, we decided to drive to a local store to see what photos the camera card had on it and copy all of the documents which may be necessary for the case or transport home. After we got his papers and passport, we drove to a FedEx shipping store and

copied many photographs, his passport and his personal papers. We also copied many color photographs stored on his SD card from the camera. I advised Alexandra that I would hire a computer expert who would be able to open the cell phone and computer to look at calls and emails and documents on the computer. This was very important to her family so that they may have information about how Michael spent his days prior to the accident.

16.     By the time I departed Roanoke on this trip, I was able to identify the travel health insurance plan that Michael had purchased and obtained some limited information from his cell phone and computer. Michael's condition remained critical. Ms. Heidebruch rescinded the DNR from her brother's chart and directed that all measures be taken to prepare him for a trip back to Germany. She decided that the physicians should take all steps necessary to provide him with lifesaving medical care.

17.     Upon my return to the office on October 24, 2011, the day was spent with correspondence to Carilion Roanoke Memorial Hospital for records and bills; letter to the adjuster for ACE insurance for Hostess, Heather Denney; letters and releases to Roanoke for the videographer to visit Sprick and take video of him; emails to the client; and reserving a court reporter for the traffic hearing for the defendant (see attached Kernbach Sprick Hours/Case Development October 14, 2011 –March 1, 2012 - 98.25 hours).

18.     After Alexandra Heidebruch returned to Germany, I was required to obtain interim progress reports from the treating physicians in Roanoke and have them translated into German. I secured the assistance of the staff of the hospital to write letters to the physicians and make sure the proper information was obtained. I remained in constant communication with Alexandra, obtaining these reports over many days and having them reviewed by the staff at the hospital before they were translated. By this time, we had an adjuster with the travel insurance company they were using in Canada, Global Excel, to help with the transport issues. I initiated contact with Global Excel and pursued locating a hospital with Alexandra where Michael could be transferred for ongoing care in Germany. Alexandra stayed in contact with his employer and his health insurance company, BKK Essenelle, to make sure they were aware of his possible return from the United States to Germany for medical care.

19.     By early November 2011, we began to experience significant issues with the travel insurance company, Global Excel. Michael remained on the ventilator at Carilion Roanoke Memorial Hospital and no physician would discharge him to travel to Germany secondary to potential complications in flight and risk of death. Global Excel stated in an email that they would refuse to pay for any treatment in the United States after early November. Global Excel declined to accept any feedback from the treating physicians at Carilion Roanoke Memorial Hospital or read the reports emailed to them. Global Excel asserted Michael should have been flown back to Germany regardless of survivability of the flight home.

20.     I opted to bypass the travel insurance, Global Excel, and chose to work directly with the insurance company, ACE, providing liability coverage to Merita Bread and driver at fault in the accident. After discussion with Ms. Denney and their counsel, Robert Yates, I negotiated for ACE to pay for the flight back to Germany. These efforts incurred 15 additional hours.

21.     I traveled to Roanoke to meet with Susan Wirt and retained her to initiate work on a life care plan for Michael Sprick. I visited with Sprick at the hospital and spoke with the staff regarding his medical condition and anticipated return to Germany. This trip to Roanoke incurred 11 hours on this matter.

22.     Michael Sprick underwent stabilizing thoracic spine surgery in late November 2011. Neurosurgeons and trauma physicians released Michael for medical transport to Germany in early December 2011. Prior to the date of discharge, I communicated with a receiving physician at the Klinkum Osnabruck, trauma section. He provided me instructions regarding the medical records; discharge plan and copies of all of the radiographic studies done at Carilion Roanoke Memorial Hospital. These directives were communicated to the social worker assigned to Sprick and the process began to put the documents together for medical transport.

23.     I coordinated with the hospital and insurance carrier to secure the payment for the flight expenses, $68,000.00, as well as mailing the passport to the hospital. I also spent considerable time speaking with Kevin Kincaid, who I hired to fly to Germany with the Air Ambulance Transport. Mr. Kincaid accompanied Michael and the medical transport crew to Germany for the purpose of obtaining video and photographs throughout the trip. I drafted and executed German medical releases for the trip and to facilitate obtaining necessary documentation in Germany. Emails were exchanged with an attorney retained in Germany for the appointment of Alexandra as the conservator of Michael and engage in resolution of the travel insurance matters. They were never resolved and we simply bypassed those issues.

24.     On December 7, 2011, I drove to Roanoke and spent the day there meeting with the hospital staff and the air ambulance crew. I met with Kevin Kincaid and the videographer who made a photographic record at my direction of the entire transfer process once the air crew from Atlanta arrived at the airport in Roanoke. I provided Mr. Kincaid the package of releases for the trip. Paramedics and physicians prepared Michael for his trip on the air ambulance for an airport close to Osnabruck, Germany. I prepared releases in German and English permitting photographs and video of the flight and ensuring all of the records/medical tests results accompanied Michael on the flight. Alexandra Heidebruch signed medical releases in German permitting me to gather medical information in Germany upon Michael's arrival at the hospital in Osnabruck. This trip to Roanoke incurred 12 hours on this matter.

25.     Once Sprick was transferred to Germany, the case prosecution difficulties increased significantly. Few aspects of the case were understood by the clients in

Germany and it was extremely difficult to assure them that the matter could be concluded to the benefit of Michael, despite several setbacks. Some of the major issues included, but were not limited to the following:

a.       My client, the injured party was now discharged and out of the country.  Michael Sprick was over 3,000 miles away, 6 time zones removed from Virginia and was in a health care system which was completely foreign to me.

b.       Although I am fluent in German, the medical/legal terminology and lengthy emails required constant translation to be clearly understood.   All communication with the major treating physicians in Germany needed to be in German.  Privacy laws initially prevented most communication but that ceased to be a problem once face to face meetings occurred.   Releases to obtain/exchange information were required to be in German.  Likewise, all court documents such as deposition notices had to be translated into German.

c.       Based on my limited dealings with the German travel insurance and local counsel in Germany which Alexandra retained, no one had any idea about the civil legal process in the United States and what was required for a successful prosecution of this matter.

d.       Medical developments regarding Michael often occurred without notice to me, some developing so rapidly that is was often difficult gather the information for the carriers or Alexandra.  Physicians in Osnabruck placed a shunt in his skull, which required 3 surgeries of the brain.  Michael was in critical condition and prognosis was poor.  I received little, if any, advance notice of that issue.  Since the shunt had been properly placed, physicians placed a Baclofen pump in his abdominal cavity, which had a recent major malfunction.  Michael was plagued with a MRSA infection, respiratory distress, insufficient therapy issues, digestive and fecal impaction issues, urinary tract infections, and other already noted difficulties.  Joerg Wilms was retained in Germany to gather updated medical records and billing statements, many had to be translated for the defendants at great expense.  The daily expenses for the care of Michael were priced as private pay without the existence of the insurance billing in Germany.

e.       We visited Michael Sprick 4 times in Germany, twice with the life care planner, Susan Wirt.  Each trip required at least 40 hours of preparation time and weeks of emails.  Appointments were scheduled to avoid German holidays and conflicts of treating providers.   Documents were copied; translators obtained for interviews; travel time incurred for the areas where Michael resided and was being treated.  Many times other visits were scheduled while on-site in Germany, such as finance personnel for bills, pharmacy information and lengthy interviews with therapy personnel.  Work days in Germany began at 8 am and usually ended at 5 or 6 pm.  Preparation was required for each day on-site.

f.     On each trip, photographs and video of Michael was obtained. It was necessary to make personal observations of him during personal visits with family and physical therapy. The staff required education after his discharge from the hospital in Osnabruck regarding what cognitive functions were important for the purposes of properly documenting the life expectancy issues.

g.     Once Michael transferred to the Lebensquelle facility, I established a relationship with the staff of the long-term care facility. This relationship greatly assisted our efforts to document the current therapy situation; medical complications; recommendations for ideal therapy treatment; and, keeping the current level of care, even though the monthly deficit for treatment runs approximately 13,000 euros per month. The deficit for the treatment was guaranteed by a personal note signed by Alexandra Heidebruch. The facility agreed to continue his care and therapy based on my assurances that their account would be brought current upon resolution of the civil case in the United States.

h.     Calls to Germany frequently had to be made from the United States at 3:00 am or 4:00 am in order to reach them at the start of the business day. Emails were exchanged at 1:00 am to 3:00 am in order to reach the recipient at the start of the business day. Most of the contacts were reluctant or outright refused to provide personal email contacts or cellular telephones and it often took multiple emails or calls to reach therapists or staff at Lebensquelle.

26.     In January 2012, the defendants, through Hostess, filed for bankruptcy. At that time, we had no response to our spoliation letters; no response to any stated defenses to our claims; and, no other information which would normally be available in the prosecution of a personal injury matter. The case in Pulaski County Circuit Court was not served at the time of the bankruptcy filing and we were not sure all of the proper entities had been identified for service. The filing automatically stayed any further legal right to address liability issues and we had no control over the evidence requested in our multiple correspondence. I personally spent at least 20 to 30 hours researching the jurisdiction where the bankruptcy was filed and determined the need for local counsel. The bankruptcy was filed just as we were planning the first trip to Germany to visit Michael. At that time, I consulted with Paul R. Thomson and requested he assist in the prosecution of the matter. I retained a law firm to assist in the filing of a motion to lift the stay and the filing of the claim with the Bankruptcy Court in the Southern District of New York.

27.     The bankruptcy filing presented a major issue for this case. We lacked access to material requested in the many spoliation letters, received no responses, and the ability to keep track of the driver, delivery records and details of the accident from his perspective was in danger of being lost.

28.     Nevertheless, the first trip to Germany occurred beginning February 13, 2012. Arriving in Osnabruck the afternoon of February 14, 2012, we met with the

family and obtained detailed information about Michael Sprick's work history, friends and family history. The next day, Susan Wirt and I visited the Main Klinik at Osnabruck, speaking with the trauma physician; the Parcelus Klinik, speaking with the neurosurgeon; and, the treating neurologist, Ruth Jannsen, who assumed his long term care at the clinic until he would be well enough to be transferred (documented at 8 hours).

29.     We met with the therapists at the long term care facility at the Klinikum Osnabruck and spent considerable time making observations regarding the improvement in Michael's physical condition and his cognitive responses to commands and movement. This was an additional 4 hours. Finally, we met with Alexandra Heidebruch one last time and she provided a detailed notebook of insurance and financial issues which was used many times in this case. Its review and use as a reference source, with English translations as needed, amounted to 20 to 25 hours the next 2 years. I was also provided with the first set of records and bills from the clinic. I discussed the billing issues with the finance office with Alexandra and they tried to assist us for a private pay rate, if that was possible. This was necessary as Germany is a socialized medicine system and lacks itemized billing in the manner we obtain in the United States.

30.     After reviewing Michael's condition and pending medical needs with Susan Wirt, we began to draft a plan to gather information required for the life care plan. Documentation from Germany required English translation for Ms. Wirt. There were constant revisions as Michael's level of care changed during this process. In addition, costs were presented in euros and required calculation to U.S. dollars. This ongoing process required an additional 3 hours of case work with her in Germany.

31.     Upon my return to the United States on February 17, 2012, ongoing communication with physicians was required to monitor the serious and life threatening complications of the shunt surgery with Michael in Germany. Simultaneously, we were addressing the bankruptcy issues in this case. Heather Denney, of ESIS claims working with ACE, requested we continue to forward her documentation on the matter. However, the bankruptcy issue complicated her role, and the matter remained subject to the stay. There was no information regarding the claims adjusters for the now known additional other liability carriers. Documents were received from Germany and videos sent to us by Alexandra. Michael was discharged from the Parcelius clinic after his third shunt operation. Susan Wirt began to exchange emails with Dr. Janssen directly and many of them required German translation for clarity.

32.     As the matter progressed from April into the late summer of 2012, the bankruptcy matter became increasingly more difficult to resolve given the inability of our office to have the stay lifted and the matter remanded back to Virginia. There was a concern that we were kept in the dark regarding the liability issues and that critical time sensitive evidence was not subject to any order of preservation. Initially, the

Court remained committed to keeping the matter in the bankruptcy court for resolution and subject to the now pending ADR plan which was being considered by the law firm representing the debtor entities. We obtained an order of preservation and inspection of the truck and other items late in 2012. The additional hours to review the pleadings; prepare the pleadings and telephone conference with the court was approximately 20 to 30 hours.

33.     I remained in constant communication with Alexandra Heidebruch during the summer of 2012 regarding Michael's medical condition; his second surgery of the Baclofen pump; the increased therapy; and, videos taken by her husband, Maik. There were emails and attachments of documents as Michael had periodic setbacks. His progress was slow and steady as he remained in Osnabruck. After the last surgery, Michael progressed to the point where he was close to being discharged from the hospital clinic to the first of two long term care facilities. I reviewed bankruptcy claim forms mailed to Michael in Germany. We reopened the bar claim date to get the forms properly filed with the court. This process resulted in an additional 50 to 60 hours of work from my office to review multiple pleadings and additional preparation of edits or new documents.

34.     Another concern was the issue of the bankruptcy as it pertained to the clients and health care providers in Germany. This required many lengthy emails and conversations to explain the process. The belief by those in Germany was that the case was over and with the bankruptcy, there was no likelihood of any recovery for Michael.

35.     By late October of 2012, it was clear that Michael had progressed to the point in his care in the clinic in Osnabruck that he was going to be discharged to the first of his long term care facilities. By insurance code as explained to me by Dr. Janssen, once Michael reached maximum medical improvement at Osnabruck, he had to be discharged. Unfortunately, I had no opportunity to discuss the facility with Alexandra and St. Andrews was selected without any research or considering their ability to handle the discharge report from Osnabruck. We were unable to review any discharge documents prior to date of discharge. These issues resulted in another additional 20 hours of case work and research with respect to the Essenelle insurance issues.

36.     The discharge to the St. Andrews facility was not suitable for Michael's medical needs. The frequency of physical therapy decreased from that which he received at Osnabruck and his cognitive functions regressed significantly. Michael developed complications and was hospitalized on an inpatient and outpatient basis. It was challenging to monitor the situation at that facility. There were no contact persons to assist us in communicating Michael's needs. This required Alexandra to make many trips to the facility to obtain medical updates and understand the medical complications incurred during this time.   The process of obtaining medical documentation was extremely difficult and time consuming. During the period from October to late February 2013, this resulted in another additional 40 hours of work.

37. The bankruptcy matter progressed to the point of the proposed ADR procedures. Secondary to the proposed procedures, I spoke to an attorney at Jones, Day regarding this case. It was clear that they lacked an adequate understanding of the nature of catastrophic injury cases or trucking accident cases. I reviewed pleadings from around the country and spoke with several attorneys who had personal injury matters pending with Hostess. We agreed to oppose the ADR procedures as proposed and although oppositions were filed, the bankruptcy court approved them with minor modifications. This resulted in an additional 25 hours from my office.

38. By early January of 2013, it became apparent that another personal visit to Germany was required to obtain the answers to pending questions regarding the medical prognosis of Michael. Susan Wirt, Paul Thomson, and I planned a trip to Germany for March 2013 to continue with necessary interviews and obtaining necessary documentation. Alexandra was displeased with the facility and began to look for other long-term care facilities. I conducted an online search for long-term care facilities for Michael which would be acceptable to the family. Susan required information from a variety of sources to assist her in the life care plan. Michael had reached maximum medical improvement, but had not achieved the maximum ability to regain improved cognitive functioning to increase his quality of life. Michael continued to experience medical complications and on-site communication was required to accurately assess his condition. By late January 2013, we initiated planning for the return trip to Germany. Appointments were scheduled with Dr. Janssen, Dr. Wolfgang Goebbels and the treatment providers at St. Andrews. The planning and documentation necessary for this trip resulted in 40 to 50 hours of work. As before, there were scheduled meetings with the family. The services of a translator in Germany were required to assist Paul Thomson and Susan Wirt. New medical releases were drafted and executed to facilitate the ongoing communication needs in Germany.

39. We returned to Germany from March 3, 2013 to March 7, 2013. Meetings were held with the treating physicians previously identified and therapy staff at St. Andrews. Michael was placed in an isolation ward, secondary to his positive MRSA test. His room was barren of any attempt to stimulate his cognitive function or mental health. Michael was totally unresponsive and appeared to have regressed to the condition he was in when hospitalized at Carilion Roanoke Memorial Hospital. His prognosis was poor. The staff at St. Andrews provided us with the requested medical documentation. However, records were primarily handwritten and lacked necessary documentation of progress. It was evident from the documentation that Michael was not receiving the necessary therapy to demonstrate any cognitive improvements. We met with Dr. Janssen who provided us the discharge papers and reviewed them with us to translate Michael's progress and treatment at the clinic. This trip incurred 17 hours of work by my office in Germany.

40. Upon our return from Germany in 2013, documents from St. Andrews and other treating providers were reviewed. We printed over 1,000 pages of medical records for the anticipated demand in the bankruptcy matter. Review of the above

documentation resulted in another 20 hours of work, including the self-translation of all of the records from Osnabruck to determine which records needed to be translated into English. The office notes from St. Andrews as well as those from the pharmacy were reviewed to determine treatment provided.

41.    It was our understanding that Michael was to be transferred to a new facility in Bad Laer, Lebensquelle, in late March 2013. This was a new facility which was visited when we were in Germany. We met with staff while in Germany and remained optimistic this facility would provide improved treatment to Michael.

42.    The case progressed very quickly on the bankruptcy matters at this time. A demand was drafted and an outline for money damages was made on all of the carriers we understood were involved in the matter. The process of reviewing the demand letter and enclosed documentation, both in German and English required 8 hours by my office. We prepared a preliminary calculation of wage losses and outlined which entities were paying for the health care of Sprick. The package was submitted in accordance with the ADR procedures of the Hostess bankruptcy court and the time line required a decision from the debtor entity quickly.

43.    It was determined that the matter of Michael Sprick was no longer appropriate for the ADR procedure by Jones, Day. Several orders were prepared to lift the stay and remand the matter back to Virginia, where it would be prosecuted in the United States District Court for the Western District of Virginia. This process required 20 hours of ADR research, master list of defendant entities to be sued and review of orders before the matter was sent back to Virginia.

44.    In mid-October 2013, the matter was prepared for filing in the court. The properly named entities were named and discovery was prepared to be served on the defendants. The proper Rule 16 information was prepared and the file was reviewed thoroughly to make sure all of the proper witnesses were named and disclosed. Another trip to Germany was planned with Paul Thomson to complete work on the life care plan for Susan Wirt. From approximately October 2013 to early January 2014, an additional 50 hours was expended to prepare and review the pleadings and also begin to focus on the defense requests to properly evaluate the case.

45.    For the trip to Germany on January 31, 2014, meetings were set up with Dr. Janssen, Dr. Thiem, the staff of Lebensquelle, Michael Sprick's employer and Joerg Wilms. Beginning February 1, 2014 through February 4, 2014, work on the case added an additional 27 hours of case preparation. Documents were acquired and exchanged with the witnesses. We reviewed Michael's situation at Lebensquelle, in light of the video we obtained earlier from Germany. As counsel from the defendant had requested specific information regarding the damages and medical evidence, witnesses were identified who would be deposed by the defendants later in the year. Updated medical records were obtained from Mr. Wilms. Additional medical records were shipped to the United States secondary to the volume of records we received. Financial records

regarding the prescriptions and therapy were calculated and the day-long meeting at Lebensquelle allowed us to chart the monthly optimal costs for a private pay patient, as well as fixed costs for Michael.

46. For the period late January 2014 to late February 2014, additional work on proposed pleadings for the federal case included, but were not limited to:

  a.   Rule 30(b)(6) notice of deposition; 2 or 3 were possible;

  b.   Witness deposition of the defendant;

  c.   Requests for admission to the defendants;

  d.   Daubert and motions in limine to challenge the as yet undisclosed defense expert witness on life expectancy and nature/extent of the brain injury;

  e.   Motions for summary judgment and motions in limine regarding several open liability questions, including the lack of helmet issue, proximate cause of the injuries of the plaintiff and lay opinions regarding the lack of cardiac function of the plaintiff at the scene of the collision by rescue personnel; and

  f.   Interview and re-interview of the witnesses and the trooper.

47. By this time, we began to focus on 4 primary issues pending in this matter. First, was the outstanding medical expenses of the plaintiff in the United States and the second was the effect of the settlement on subrogation or lien issues brought to our attention by Mr. Wilms in Germany. Extensive research on the issue was conducted by Mr. Wilms. We understood these issues to be ones which needed to be addressed before mediation settlement or trial. Almost immediately, I focused on the deposition dates for the witnesses in Germany and the translation issues for the notices and subpoenas which were required. I personally called Dr. Janssen and Dr. Thiem to clear dates and ensured no addition releases were required. We selected deposition locations and arranged for translation services for our translation needs to prepare the witnesses. We arranged for defense counsel to visit Mr. Sprick at the Lebensquelle facility. The aforementioned efforts required 4 trips to Roanoke to work with co-counsel; pleadings review and legal research; medical research on the brain injury issues and life expectancy issues; review of the Wirt life care plan and adjustments in prices for equipment in Germany and the possibility that Michael could be cared for at home; resulting in 50 to 55 hours of effort expended and communication with case resources.

48. Working with defense counsel, I secured the deposition dates in Germany for Drs. Thiem and Janssen; Alexandra Heidebruch; and, Wilhelm Sprick, the week of April 14, 2014 through April 17, 2014. Counsel was provided with addresses for the medical witnesses and the necessary information for German translations of the notices of deposition for the witnesses and subpoenas. This helped significantly with

Dr. Janssen who had to clear all of this with the hospital administrators.

49.    Mr. Thomson and I also needed to meet with the therapists at Lebensquelle before the depositions and observe Michael to view his progress. He was much better and the staff provided updated notes and prescription medication information for Susan Wirt. We also obtained information regarding wheel chairs and vehicles for Michael which confirmed earlier information provided to Ms. Wirt for her report. I met with Joeg Wilms before the trip to Osnabruck to update the information regarding Michael and once I arrived in Osnabruck, all of the witnesses were contacted and prepared for their depositions. The time expended for this trip was approximately 34 hours for witness interviews, case depositions, case preparation and obtaining additional litigation information.

50.    Over the next two months, Paul R. Thomson and I worked on the pending litigation. We received the defendants' expert witness designation and began to fully investigate the background of the retained physician. We obtained the textbook the physician was relying upon for his opinions and researched multiple sources regarding the medical practice he was associated with. Motions for Summary Judgment were researched and filed with the Court. Counsel for the defendants was fully engaged in suggesting a mediation process as well as requesting additional specific information as the issues in controversy became clearer. Susan Wirt was scheduled for a deposition regarding the life care plan she prepared and after preparation, her deposition was taken. Approximately 35 hours was expended in this process.

51.    By late May 2014, 3 major case projects were underway. The first was keeping to the trial schedule as set by the Court and making sure that all of the deadlines were met by the plaintiff. Additional motions were researched by Mr. Thomson and I. Motions in Limine and possible additional summary judgment motions were considered. The next case project concerned a final trip to Germany to take depositions for use at trial. The week of August 25, 2014 was selected for a final trip to Germany by Susan Wirt to visit and examine Michael. It was decided that since no expert of the defendants had ever examined Michael, her testimony regarding the condition of Michael would be more credible if conducted closer to the trial date.

52.    Friends of Michael were located by joining a Facebook group and 2 potential witnesses were located in Germany who knew Michael quite well. His employer was also to be deposed as well as Michael's father, Wilhelm. The therapists were to be deposed as to the progress of Michael, as evidenced by yet another received video at my office. Finally, the chief patient advocate for Michael at Lebensquelle was to be deposed regarding the progress Michael had made the previous 6 months.

53.    The final case project was the scheduling of a focus group in Roanoke in late June 2014 for the purposes of bringing the major case issues before a panel of 2 juries selected for this project. I was to play the plaintiff's attorney before both panels and selected charts and photographs which were to be used in a created power point presentation. Diagrams of the injuries of Michael had been professionally prepared and

several videos were selected for the presentation. Most of this case work was done the week of June 16, 2014 and the focus group was conducted Saturday, June 21, 2014. An additional 60 hours was expended on this aspect of the case up to late June, 2014.

54. Following the focus group meeting on June 21, 2014, I concentrated on the preparation of the mediation notebook for Rodney Max. I met with Mr. Thomson at his office twice in Roanoke and worked with his staff to prepare a CD of relevant information for Mr. Max (see Mediation Notebook and Mediation Hour Worksheet). After the notebook was prepared, it was reviewed and annotated for Mr. Max. I flew to Miami to meet with him and reviewed the case aspects. 52 hours was expended in this process.

55. Up to the conference of August 22, 2014, I incurred travel hours in the amount of 228.25 (see Kernbach Sprick Travel Hours).

56. Through September 20, 2014, I exchanged or reviewed over 7,664 emails in this matter (see Sprick Email Distribution Sheet), for a total amount of time expended of 639 hours. The number of telephone calls was not documented, other than charges to Germany, and text or Facebook messages were also not documented, although the numbers of such alternative communication methods was significant and occurred with many witnesses in Germany and the sister of Michael, Alexandra Heidebruch.

57. With respect to the ongoing bankruptcy matter, issues relevant to this case still arise with ACE insurance and the ADR process. As of September 17, 2014, I have received and reviewed over 3,410 filed documents in the United States Bankruptcy Court for the Southern District of New York. I expect to continue to monitor those filings until this matter has been concluded.

58. I also expect to expend an additional 80 to 100 hours in this matter to resolve the German legal and tax issues for Michael. I will travel to Germany in the near future to meet with the legal and claims department of his health insurance, Essenelle, if the subrogation and lien issues are not resolved to his benefit shortly. I may also have to appear in Court in Germany to explain the basis of the distribution of the net proceeds to Michael and how the settlement process arrived at that amount and what the payment represents.

59. Based on the aforementioned, I estimate my hours expended in this matter to conservatively total 1,896.50 as of the date of this affidavit.

60. Based on the aforementioned activities, I have incurred expenses in the amount of $61,870.87 as of the date of this affidavit.



_____
Michael A. Kernbach, Esquire
Affiant

COMMONWEALTH OF VIRGINIA
CITY OF MANASSAS

Subscribed and sworn to before me this 22nd day of September, 2014.

_____
Notary Public

My Commission Expires: 12/31/14

Notary Registration No.: 173855

# KERNBACH SPRICK HOURS/CASE DEVELOPMENT
## October 14, 2011-March 1, 2012

| Description | Hours |
|---|---|
| Email case referrals 10/14/2011 through 10/19/2011 between MAK, Svenja Risse and Marcus Goeltz | 0.50 |
| Email case referrals 10/20/2011 and meeting with Alexandra Heidebruch | 2.00 |
| Travel time to Roanoke and return on 10/20/2011 | 7.00 |
| Calls/Fax to Willis Perrine/Steve Chewning for witness interview and scene/evidence preservation; preparation of complaint; telephone call to Trooper Dalton; email Alexandra Heidebruch; Carilion Health Services Call-schedule to pick up Sprick personal effects-10/21/2011 | 3.00 |
| Email/telephone call to case referral source-Sveja Risse-10/23/2011 | 0.50 |
| Travel to Roanoke and return; pick up Sprick personal effects-10/23/2011 | 7.50 |
| Letter/email-Patient Accounts-Carilion Roanoke Memorial Hospital; Heather Denney information/contact information; email to Alexandra Heidebruch; contact set up for Bob Young-Central Virginia Court Reporters; Casamo Court Reporter for traffic court case-10/24/2011 | 2.50 |
| Email-case contact-Svenja Risse; Sensei Enterprises-cell phone/computer download estimate | 0.50 |
| Emails-case contact-Svenja Risse; transport issues-payment; Heather Denney telephone call-inquiry; Marcus Goeltz email; transport hospital issues to Germany; Insurance claim forms to Teresa Mitchell/Carilion-Bob Young authorization-Letters of representation-10/26/2011 | 2.00 |
| Email to case contact-Svenja Risse/Alexandra Heidebruch-911 letters for communication tapes-10/27/2011 | 1.00 |
| Susan Wirt-contact; Bob Young-return to hospital issue; transport issues for payment by ACE/Hostess-10/28/2011 | 1.00 |
| Email to case contact-Svenja Risse; Alexandra Heidebruch return to Germany-10/29/2011 | 0.25 |
| Susan Wirt email/contact information-CV information-clinical information-release; Angela-call at Carilion Clinic-11/1/2011 | 0.50 |
| Email to Susan Wirt/Diane-transport costs issues-11/2/2011 | 0.25 |
| Email from Teresa Mitchell/cc: Susan Wirt-11/3/2011 | 0.25 |
| Contact information-Phillip L. Schonberger and email to M. Pschorn-Global Excel-11/7/2011 | 0.50 |
| Ruth Boggs email-translation for German lawyer-release/transport information-11/8/2011 | 0.25 |

| | |
|---|---|
| Spoilation letters-4 and emails-11/11/2011 | 2.00 |
| Mitchell letter of 11/28/2011-passport | 0.25 |
| Casamo-reporter schedule order; Kevin Kincaid call-transport issues | 0.25 |
| Calls to Bob Young; transport emails; Kevin Kincaid schedule call-12/3/2011-12/5/2011 | 0.50 |
| Evans Reporting call-transcript-12/6/2011 | 0.25 |
| Meeting with Kevin Kincaid at Carilion Roanoke Memorial Hospital-transport day of Sprick-Roanoke, VA-12/7/2011 | 2.00 |
| Travel time to Roanoke and return on 12/7/2011 | 7.00 |
| Meeting with Susan Wirt at J. Johnson office in Roanoke-12/19/2011 | 1.00 |
| Travel time to Roanoke on 12/19/2011 | 3.50 |
| Meeting at Carilion Roanoke Memorial Hospital with hospital staff regarding billing-12/20/2011 | 1.00 |
| Travel time from Roanoke on 12/20/2011 (split with another client depo in Roanoke held on 12/20/2011) | 1.75 |
| Meeting with Susan Wirt at Pomegranate in Troutville, VA-12/22/2011 | 1.50 |
| Travel time to Roanoke and return on 12/22/2011 | 6.50 |
| Letter to Carilion Hospital-billing for October to December; records request-12/29/2011 | 0.25 |
| Meeting in Roanoke with Susan Wirt-1/5/2012 | 1.00 |
| Travel time to Roanoke and return on 1/5/2012 | 7.00 |
| 4:9 (c) subpoena-3; police dispatch records-1/12/2012-$36.00 filing fee | 0.50 |
| Review of Hostess Bankruptcy issues-1/12/2012 | 0.50 |
| Travel to Germany-2/13/2012 and 2/14/2012 | 12.0 |
| Diane Brown terminated by Jack Burgess on 2/14/2012; loss of office support (notification upon landing in Germany) | - |
| Meeting with Alexandra in Germany-2/14/2012 | 1.0 |
| Meetings with care providers in Germany-2/15/2012 | 4.0 |
| Meetings with care providers in Germany/Alexandra-2/16/2012 | 3.0 |
| Return from Germany-2/17/2012 | 12.0 |
| **Total Hours for Michael A. Kernbach October 14, 2011-March 1, 2012** | **98.25** |

# LAW OFFICE MICHAEL A. KERNBACH SPRICK TRAVEL HOURS
## March 1, 2012-PRESENT

| Description | Hours |
|---|---|
| Travel to Roanoke and return for meeting with Susan Wirt-9/19/2012 | 7.00 |
| Travel to Roanoke and return for hearing in US District Court-10/15/2012 | 7.00 |
| Travel to Charlotte, NC for flight to Germany-3/3/2013 | 6.50 |
| Flight to Germany-3/3/2013 | 12.00 |
| Travel from Frankfurt to Osnabruck-3/3/2013 | 3.00 |
| Travel from Osnabruck to Frankfurt-3/6/2013 | 3.00 |
| Flight from Germany-3/7/2013 | 12.00 |
| Travel to Dulles for flight to Germany-1/31/2014 | 0.50 |
| Flight to Germany-1/31/2014 | 12.00 |
| Travel from Frankfurt to Osnabruck-2/1/2014 | 3.00 |
| Travel from Osnabruck to Frankfurt-2/6/2014 | 3.00 |
| Flight from Germany-2/6/2014 | 12.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-2/20/2014 | 7.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-3/7/2014 | 7.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-3/13/2014 | 7.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-3/27/2014 | 7.00 |
| Travel to Dulles for flight to Germany-4/19/2014 | 0.50 |
| Flight to Germany-4/11/2014 | 12.00 |
| Travel from Frankfurt to Osnabruck-4/12/2014 | 3.00 |
| Travel from Osnabruck to Frankfurt-4/19/2014 | 3.00 |
| Flight from Germany-4/19/2014 | 12.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-5/22/2014 | 7.00 |
| Travel to and from Roanoke for trial prep at Paul Thomson office-6/12/2014 | 7.00 |
| Travel to and from Roanoke for mediation prep at Paul Thomson office-6/19/2014 | 7.0 |
| Travel to and from Roanoke for mediation prep at Paul Thomson office-6/26/2014 | 7.00 |
| Travel Roanoke for mediation prep at Paul Thomson office-6/27/2014 | 3.50 |

| | |
|---|---|
| Travel from Roanoke for mediation prep at Paul Thomson office- 6/29/2014 | 3.50 |
| Travel to and from Roanoke for Sprick hearing at US District Court- 7/3/2014 | 7.0 |
| Travel to Reagan National Airport for trip to Miami to meet with mediator-7/5/2014 | 0.75 |
| Flight to Miami-7/5/2014 | 3.00 |
| Travel to Ft. Lauderdale from Miami for meeting with mediator-7/6/2014 | 1.25 |
| Travel from Ft. Lauderdale to Miami for return flight-7/6/2014 | 1.25 |
| Flight from Miami to Reagan National Airport-7/6/2014 | 3.00 |
| Travel to Dulles Airport to pick up Alexandra for mediation-7/13/2014 | 0.50 |
| Travel from Dulles Airport to Clifton with Alexandra-7/13/2014 | 0.50 |
| Travel to LeClair Ryan in Alexandria for mediation-7/15/2014 | 1.00 |
| Travel to Reagan National Airport to drop off mediatior-7/15/2014 | 0.50 |
| Travel from Reagan National Airport to Clifton with Alexandra-7/15/2014 | 0.50 |
| Travel to Dulles to drop off Alexandra for return trip to Germany- 7/17/2014 | 0.50 |
| Travel to and from Roanoke for hearing in US District Court-8/22/2014 | 7.00 |
| **Total Travel Hours for Law Office Michael A. Kernbach** | **228.25** |

Hours for Preparation of Mediation Notebook and meeting with Rodney Max in

Miami, Florida on July 12, 2014 and Mediation July 15, 2014

1. Mediation conference with Paul Thomson July 3, 2014.  (4 hours)
2. Review of documents for mediation notebook July 3, 7 and 8, 2014:
   a. Liability documents from crash and state police
   b. Witness statements
   c. Transcript of Traffic Hearing
   d. Dispatch records of Sprick crash and medical response
   e. Review of Carilion medical records and reports of attending and discharge physicians
   f. Review of photographs and video of Kevin Kincaid
   g. Review of video of Sprick at Carilion
   h. Review of video of Sprick at Germany
   i. Review of photographs of Sprick in USA
   j. Review of Sprick photographs from family in Germany
   k. Review of German Sprick progress reports and discharge reports of Dr. Janssen, Senior Physician, Klinkum Osnabruck, Germany
   l. Review of Sprick pleadings; Complaint, Answer, Interrogatory Responses, Responses to Request for Admissions and Amendments
   m. Review of Medical Diagrams and Defendants' Medical designation and text of Zasler Textbook on Brain Injury Medicine; Life Expectancy and Wellness issues; First and Second Edition volumes; Med line brain injury research, life expectancy
   n. Research on Brain Injury issues plaintiff and defense positions and life expectancy chart on projected life expectancy Code Section 8.01-419, Janssen, and defense witness.
   o. Review of Wirt life care plan and cost estimates on life expectancy for 3 estimates; review of Janssen Deposition; Sprick cost estimates for home care for Michael from Heidebruch; Joerg Wilms information; research on

cost and care requirements for home care; review of cost estimates of long term care facility

p. Economic Loss Analysis report of Larry A. Lynch and Damages summary report review and cross reference with Damages summary

q. Damages Summary report and cross reference with Wirt and Lynch reports

r. Virginia Model Jury Instructions review and General Personal Injury Instruction and Life Expectancy notes review

s. Review of Focus Group Power Point presentation for plaintiff and edit review for Rodney Max viewing with transfer to CD.

t. Written index review of day in the life video of Sprick

u. Review of chaptered day in the life of video of Sprick

v. Review of original demand letter of July 3, 2013


(17 hours)

3. Preparation of cover correspondence to Rodney Max and edit reviews with Paul Thomson  (4 hours)

4. Edit reviews of Plaintiff Focus group presentation with office of Paul Thomson.  (1 hour)

5. Purchase of materials for Preparation of Mediation Notebooks and copy of documents for notebook; Assembly of mediation notebooks  (3 hours)

6. Review of Rodney Max notebook and high light sections of importance for his review and notes of settlement ranges and cost estimates (6 hours)

7. Review of Focus Group questionnaire responses and case value questionnaire/case comments; Copy for Rodney Max (2 hours)

8. Meeting with Rodney Max in Miami to review case, issues encountered in documenting damages, case evaluation and defense life expectancy issues {July 13, 2014} (3.5 hours)

9. Review of mediation notebook with Alexandra Heidebruch and review of case status (4 hours)

10. Mediation of Sprick matter at law office of LeClair Ryan Alexandria, Virginia (6.5 hours)

11. Review of Settlement and distribution issues with Alexandra Heidebruch (1 Hour)

Total Hours for Mediation Preparation and Mediation Presentation with follow up preparation: 52 Hours

# Law Office Michael A. Kernbach
## Email distribution Michael Sprick
### October 17, 2011-September 20, 2014

| Name | Email address | Description | Total emails Sprick |
|---|---|---|---|
| Alexandra Heidebruch (1) | a.heidebruch@gmx.net | Sprick sister/conservator & guardian in Germany | 780 |
| Alexandra Heidebruch (2) | Madelein75@gmx.net | Sprick sister/conservator & guardian in Germany | 859 |
| Ruth Boggs | ruthеboggs@gmail.com | Translation service in United States | 967 |
| Dr. Ruth Janssen | ruth.janssen@klinikum-os.de | Sprick Physician in Germany | 142 |
| Brendan Scott, Esq | BScott@klestadt.com | United States Bankrupty Attorney-Hostess | 119 |
| Frank Horstmoeller | frank.horstmoeller@gmail.com | Videographer in Germany | 33 |
| Teresa Gehrs | gehrs@linguaconnect.de | Translation services in Germany | 40 |
| Carol Hogg | carol.hogg@uebersetzungen-hogg.de | Translation services in Germany | 51 |
| Beth Weller | BethW@lgbs.com | Bankruptcy | 1 |
| Barry Glaser | bglaser@swplaw.com | Bankruptcy | 4 |
| Abigail Snow | asnow@ssbb.com | Bankruptcy | 11 |
| Lisa Voorvarrt | LVoorvarrt@uks.com | Bankruptcy | 1 |
| Larry Simon | LSimon@laverbaumWurgaft.com | Bankruptcy | 2 |
| Scott Stover | swstover@sbcglobal.net | Bankruptcy | 2 |
| Frank Cantrell | fcantrell@malsi.org | Bankruptcy | 1 |
| Evan Gershbein | egershbein@malsi.org | Bankruptcy | 1 |
| Joe Morrow | jmorrow@kccllc.com | Bankruptcy | 1 |
| Casey Mucha | cmucha@fullbright.com | Bankruptcy | 2 |
| Linda Smith | lssmith@frfullbright.com | Bankruptcy | 1 |
| Lydia Pastor | LPastor@kccllc.com | Bankruptcy | 34 |
| Alvaro Salas | ASalas@kccllc.com | Bankruptcy | 3 |
| Andres Estrada | AEstrada@kccllc.com | Bankruptcy | |

| Todd Cushner | todd@cushnergarvy.com | Bankruptcy attorney | 55 |
| Veerle Roovers | vroovers@JonesDay.com | Bankruptcy/Hostess/Jones Day | 34 |
| Heather Lennox | hlennox@JonesDay.com | Bankruptcy/Hostess/Jones Day | 27 |
| Jason Cover | jcover@Jones.Day.com | Bankruptcy/Hostess/Jones Day | 40 |
| PACER system | echnoticing@vawd.uscourts.gov | Bankruptcy | 87 |
| PACER system | nysbinfo@nysb.uscourts.gov | Bankruptcy | 543 |
| Maik Heidebruch | maik@englishfire.de | Videotaping Michael Sprick in Germany | 97 |
| Gabriele Francois | gabi.francois@osnanet.de | Translation services in Germany | 4 |
| Barbara Duerk | barbgary@cox.net | Good Samaritan in Roanoke/provided Alexandra Heidebruch lodging | 7 |
| Jeff Gustafson | jeff@ccmedflight.com | Critical Care Medflight/medical flight to Germany from Roanoke | 82 |
| Magdalena Pschorn | Magdalena Pschorn@globalexcel.com | German Health Insurance | 48 |
| Ellen Luedcke | luedcke@rechtsanwaelte-schnoeckelborg.de | German Health Insurance | 54 |
| German Health Insurance | ambulance@roland_assistance.de | German Health Insurance | 36 |
| Kevin Kincaid | kincaid42@gmail.com | Escort Sprick to Germany | 41 |
| Phillip Schonberger | Phil22304@aol.com | Air ambulance assistance | 32 |
| Teresa Mitchell | tlmitchell@carilionclinic.org | Roanoke Memorial Hospital SW | 135 |
| Jessie Lindmar | jlindmar@senseient.com | Digital Forensics/Sensei Enterprises | 14 |
| Jamie Overton | Joverton@tscrecon.com | Chewning accident reconstruction | 9 |
| Heather Denney | Heather.Denney@ACEgroup.com | ACE group adjustor | 87 |
| Svenja Risse | srisse@kpmg.com | Referral source in Germany/Initial German contact for case | 28 |
| Ms. Zipplies | zipplies@osnanet.de | Physical Therapist in Germany | 15 |
| Gabriele Wesselkock | physio.wesselkock@osnanet.de | Physical Therapist in Germany | 21 |
| Julia Esrom | julia@wordsnaturally.com | Translation services in Germany | 104 |
| Imke Klotz | i.klotz@sander-pflege.de | Lebensquelle manager (LTC facility) | 33 |
| Rodney Max | rmax@uww-adr.com | Mediator-July 15, 2014 | 34 |

| Heather Lariscy | hlariscy@uss-adr.com | Mediation | 49 |
|---|---|---|---|
| Asha Kays | akays@amicusvisualsolutions.com | Visual aids for focus group/trial | 18 |
| Susan Wirt | susan@wirtandassociates.com | RN/Life care plan | 1008 |
| Tarek Buchmueller (1) | tarekbuchmueller@gmail.com | German attorney for Sprick | 242 |
| Tarek Buchmueller (2) | ra.buchmueller@t-online.de | German attorney for Sprick | 415 |
| Robert Yates | Robert.Yates@leclairryan.com | Counsel for Hostess | 567 |
| John Keith | jkeith@bklaw.com | Counsel for Sprick lien | 25 |
| John McCulloch | jmcculloch@structures.com | Structures for settlement | 23 |
| Jim Beatty | jbeatty@epssettlements.com | Structures for settlement | 88 |
| Chad Burbrink | cburbrink@epssettlements.com | Structures for settlement | 17 |
| Joerg Wilms | wilms11@gmx.de | German Insurance Consultant | 424 |
| Paul Thomson | paul@roanokeinjurylawyer.com | Co-counsel for Sprick | 5488 |

Sprick total emails from October 17, 2011-September 20, 2014=**7664**